**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY ____HH____
Deputy Clerk

**Jul 3, 2014**

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. MIAMI

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 03, 2014

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  13-14121-AA
Case Style: Cegeste Barthelus v. G4S Government Solutions, Inc.
District Court Docket No: 1:12-cv-22945-CMA

The enclosed judgment is hereby issued as the mandate of this court.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's
decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision
was previously forwarded to counsel and pro se parties on the date it was issued.

Sincerely,

JOHN LEY, Clerk of Court

Reply to:  Eleanor M. Dixon
Phone #:  (404) 335-6172

Enclosure(s)

MDT-1 Letter Issuing Mandate

**UNITED STATES COURT OF APPEALS**
**For the Eleventh Circuit**

_____

No. 13-14121

_____

District Court Docket No.
1:12-cv-22945-CMA

CEGESTE BARTHELUS,

Plaintiff - Appellant,

versus

G4S GOVERNMENT SOLUTIONS, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: May 27, 2014
For the Court: John Ley, Clerk of Court
By: Jeff R. Patch

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14121
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-22945-CMA

CEGESTE BARTHELUS,

Plaintiff-Appellant,

versus

G4S GOVERNMENT SOLUTIONS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 27, 2014)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Cegeste Barthelus, who is Haitian and black, appeals *pro se* the summary

judgment the District Court granted his former employer, G4S Government

Solutions, Inc. ("G4S" or "WSI"),[1] on his claims that, in violation of Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1) and § 2000e-

3(a), and 42 U.S.C. § 1981, G4S discriminated against him in the workplace,

denied him promotions and then terminated his employment on account of his age,

race and national origin and that G4S retaliated against him for complaining about

such discrimination.  We affirm, in part, and vacate and remand, in part.

## I.

The operative pleadings before the District Court when it ruled on G4S's

motion for summary judgment were the plaintiff's First Amended Complaint (the

"complaint") [ECF No. 9], and the defendant's Answer and Affirmative Defenses

to Amended Complaint (the "answer") [ECF No. 10].

## A.

Barthelus's complaint, which was filed on September 21, 2012, contains 69

paragraphs and four counts.[2]  Counts I and III allege claims of unlawful

discrimination in the workplace and in the termination of his employment.  Count I

alleges that G4S discriminated against Barthelus based on his national origin, in

violation of Title VII; Count III alleges that G4S discriminated against Barthelus

---

[1]  G4S was previously known as Wackenhut Services, Inc.
[2]  Barthelus's complaint seeks damages and equitable relief.

because of his race, in violation of § 1981.  Counts II and IV, brought under Title

VII[3] and § 1981, respectively, allege that G4S terminated Barthelus's employment

because he filed a complaint of discrimination with its Human Resources

Department.  We do not consider Barthelus's appeal of the judgment on those

counts because his brief presents no argument that the District Court erred in

granting summary judgment on the claims asserted in those counts.[4]  We focus,

instead, on Counts I and III.

The first 18 paragraphs of Barthelus's complaint trace his employment from

December 29, 1997, when he came to work for G4S's predecessor, The Wackenhut

Corporation, as an electrical engineer in its I.T. Department, to February 10, 2011,

when G4S terminated his employment.  Paragraphs 11 through 18 describe

incidents of discriminatory treatment he allegedly received based on his race or

national origin that took place during that time frame.  Those paragraphs describe

the treatment thusly:

"[A]bout October 5, 2005, Defendant began discriminating against Plaintiff

because Plaintiff is Haitain and/or because of his race."  ¶ 11.  "In . . . October,

2005, Plaintiff was denied a promotion because he had a Haitian accent."  ¶ 16.

---

[3] *See* 42 U.S.C. § 2000e-3(a).

[4] "While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned."  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (internal citations omitted).

"After ten (10) years of service, Mr. Galusha, the chief technology officer, who was also Plaintiff's supervisor, provided Plaintiff with a very bad performance review." ¶ 12.  "After discussion between Plaintiff and Mr. Galusha, Mr. Galusha decided that the performance review was inaccurate and sought to amend the evaluation, but his . . . supervisor, Mrs. Laura Thomas, a non-Black, non-Haitian, objected to the amendment." ¶ 13.

"Plaintiff, the only Black, Haitian employee in [the I.T.] department, did not receive a pay increase whereas all other non-Black, non-Haitian employees did." ¶ 14.

"On . . . December 16, 2009, Mrs. [Deborah] Bria [the I.T. Manager, who is non-Haitian and non-Black] denied Plaintiff extra days off . . . because Plaintiff was on vacation during a holiday period, but . . . granted [extra] days off to a non-Black, non-Haitian employee who was also on vacation during a holiday period." ¶ 17.

"On . . . April 1, 2010, Mrs. . . . Bria . . . began discriminating against Plaintiff.  For example, Mrs. Bria, on many occasions, required Plaintiff to cut his lunch break short and return to work (where there was no emergency that required such), but Mrs. Bria did not treat other similarly situated employees not in the same protected class in such a manner." ¶ 15.

4

"On . . . December 10, 2010, Mrs. Bria repeated her discriminatory actions by granting Plaintiff's white, non-Haitian counterparts leave while denying Plaintiff the same privileges." ¶ 17.

"All senior title employees, such as Plaintiff, had an office, but Plaintiff, being the only Black, Haitian employee in his department, did not." ¶ 18.

Count I, "Violation of Title VII of the Civil Right[s] Act of 1964: Discrimination Based on National Origin" incorporates the first 18 paragraphs of the complaint and adds an additional 13 paragraphs, quotes from Title VII the text of 42 U.S.C. § 2000e-2(a)[5] and alleges that "Plaintiff was discriminated against by his supervisors because he was Haitian," ¶ 25; "Defendant, through its practices and policies as an employer, . . . discriminated against Plaintiff on account of his national origin . . . with respect to its decision to treat Plaintiff different from other similarly situated employees who are not in the same protected class as Plaintiff," ¶ 28; and "Plaintiff was fired by Defendant and Plaintiff's termination from

---

[5]  Paragraph 19 quotes 42 U.S.C. § 2000e-2(a) as follows:

It shall be an unlawful employment practice for an employer to: (1) fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's [race], color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's [race], color, religion, sex, or national origin.

employment was directly and proximately caused by the Defendant's unjustified discrimination against Plaintiff because . . . he was Haitian," ¶ 29.

Count III, "Discrimination Based on Race in Violation of § 1981," incorporates paragraphs 1 through 18 of the complaint and alleges that "Defendant has engaged in a pattern of continuous discrimination against Plaintiff based on his race." ¶ 46. "During the course of his employment . . . Plaintiff was continually and repeatedly subjected to severe and pervasive racial discrimination by Defendant's agents because of racial animus towards Plaintiff." ¶ 47. "Defendant crafted and implemented a plan to eventually terminate Plaintiff based upon his race." ¶ 48. "Plaintiff was singled out for treatment in a discriminatory manner by Defendant because of his race." ¶ 49. "Defendant, and its supervisory personnel, was aware that discrimination on the basis of race was unlawful but acted in reckless disregard of the law.  Plaintiff complained to Defendant's Human Resources Department on . . . December 28, 2010." ¶ 50. "The actions and language of the Defendant were so severe and pervasive as to alter the terms, conditions, and/or privileges of his employment with the Defendant." ¶ 51. "Defendant's actions were based upon Plaintiff being a Black individual.  The Defendant subjected Plaintiff to race-based animosity." ¶ 52. "At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff

were all in a position that possesses the authority to affect the terms, conditions, and privileges of the Plaintiff's employment with Defendant."  ¶ 57.

## B.

G4S apparently concluded that the "well-pleaded facts" of Barthelus's complaint were sufficient, under *Ashcroft v. Iqbal*, "to permit the [district] court to infer more than the mere possibility of misconduct," 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009), and therefore bypassed filing a motion to dismiss or a motion for a more definite statement under Federal Rules of Civil Procedure 12(b)(6) or 12(e),[6] respectively, and answered the complaint, on October 3, 2012.

G4S's answer responds to the complaint paragraph-by-paragraph, denies the allegations of discrimination and retaliation, and asserts that "Plaintiff received a number of poor performance reviews, including by Mr. Galusha," ¶ 12; that "Plaintiff [was informed] that his employment would be terminated if he did not improve," ¶ 36;  and that, "after receiving a variety of poor performance evaluations and warnings, Plaintiff complained to human resources," ¶ 50.

---

[6]  In *Bell Atlantic Corp. v. Twombly*, Justice Stevens stated, in dissent, that "[t]he remedy for an allegation lacking sufficient specificity to provide adequate notice is . . . a Rule 12(e) motion for a more definite statement."  550 U.S. 554, 590 n.9, 127 S. Ct. 1955, 1985 n.9, 167 L. Ed. 2d 929 (2007) (Stevens, J., dissenting).  When one considers the differences in the positions Barthelus  and G4S took in their joint pretrial stipulation, as indicating in subpart C, *infra*, it becomes obvious that a more definite statement would have reduced the amount of discovery the parties engaged in and assisted the District Court in getting to the root of the parties' controversy.

After responding to the complaint's paragraphs, the answer asserts six affirmative defenses, including that "Plaintiff cannot establish a prima facie case of discrimination"; "Defendant terminated Plaintiff for legitimate nondiscriminatory reasons"; and that "Plaintiff's claims are barred by the applicable statute of limitations."  Answer at 6.

### C.

Three days after G4S filed its answer, the District Court set the case down for trial on July 29, 2013, and ordered the parties' discovery monitored by the Magistrate Judge.  After discovery concluded, the parties filed a pretrial stipulation [ECF No. 64].  Among other things, they described their respective contentions.

According to Barthelus, he

> filed a Complaint against Defendants alleging: 1) Discrimination Based On Race and National Origin in Violation of Title VII of the Civil Rights Act of 1964; 2) Retaliation in Violation of Title VII of the Civil Rights Act of 1964; 3) Discrimination Based On Race in Violation of 42 U.S.C. § 1981; 4) Retaliation in Violation of 42 U.S.C. § 1981.

> Defendant hired Plaintiff to work as a Senior Network Administrator. Plaintiff worked for Defendant from December 29, 1997 through February 10, 2011.  Plaintiff claims that several of Defendant's agents discriminated against Plaintiff based on the fact that he is a Black Haitian.  These instances of discrimination include, but are not limited to, the following: Plaintiff was subject to a very negative, though highly inaccurate, performance review and when Plaintiff's immediate supervisor sought to amend the review, the amendment was rejected by a non-Black, non-Haitian supervisor; Plaintiff was unjustifiably asked to cut his lunch break short by a non-Black, non-Haitian supervisor on numerous occasions; Plaintiff was denied a promotion

because he had a Haitian accent; Plaintiff was denied vacation days at times when other similarly-situated, though non-Black, non-Haitian employees were not; and Plaintiff was not given an office whereas other similarly-situated, though non-Black, non-Haitian employees were.

Plaintiff complained about this discrimination to Defendant's Human Resources Department.  One such complaint was made on or about December 28, 2010, less than two months before Plaintiff was terminated.  Plaintiff claims his termination was in retaliation for complaining about repeated incidents of discrimination.

Pretrial Stipulation at 1–2.

According to G4S, Barthelus's complaint "asserts only a claim for national origin discrimination under Title VII.  No claim for race discrimination is asserted."  With that said, G4S explained Barthelus's claims and its view of the facts not in dispute as follows:

Plaintiff was hired by [G4S] in August 2002 . . . .  He worked for [G4S] until February 10, 2011, when he was terminated for performance deficiencies.  As the Senior Network Administrator, Plaintiff was responsible for not only the operation of the company's computer system and administration of e-mail and system servers, certain software solutions, and back-up systems, but also for the proactive monitoring of vulnerabilities in the systems and implementation of proactive solutions in the ever growing field of information technology.  As [G4S] grew, Plaintiff could not keep up with the tasks assigned to him and resisted learning newer solutions such as virtualization of systems.  After numerous warnings and attempts at helping Plaintiff understand his performance deficiencies, all of which were met with resistance, Plaintiff was terminated.  The same person who hired Plaintiff, Paul Donahue, also made the decision to fire him.

In addition to the basic facts of this case, [G4S] takes issue with the factual allegations asserted by Plaintiff in his summary . . . as several issues were not raised in the [complaint], or are barred by the

applicable statute of limitations.  By way of example, Plaintiff asserts that he was passed over for promotion in 2005, which is barred by the limitations period.  For the first time in response to Defendant's Motion for Summary Judgment, Plaintiff claimed that he was passed over for promotion when Deborah Bria was promoted in mid-2010, which claim was raised neither in Plaintiff's EEOC charge or his [complaint].  Thus, that claim is not at issue in this litigation.

The only issue properly raised in the pleadings in this case is whether Plaintiff was terminated due to his race, national origin, or because in December 2010 he complained about alleged discrimination.  [G4S] will present evidence at trial, if summary judgment is not entered in its favor, that Plaintiff was terminated for one reason and one reason only: his continued failure to perform his job responsibilities to [G4S's] standards.

Pretrial Stipulation at 2–3.

## II.

"During Barthelus's entire tenure at [G4S], he was the only Senior Network Administrator and the only engineer within the [I.T.] department."  Order [ECF No. 71] at 5.  In presenting its case for summary judgment, and as the District Court noted in its dispositive order, "G4S concede[d] [that] Barthelus has satisfied the elements of a *prima facie* case."  *Id.* at 22–23.  Given that concession and its impression that the only issue Counts I and III presented was whether G4S terminated Barthelus's employment for a legitimate non-discriminatory reason,[7]

---

[7]  The court apparently agreed with the statement G4S made in the pretrial stipulation—that "the only issue properly raised in the pleadings in this case is whether Plaintiff was terminated due to his race, national origin, or because in December 2010 he complained about alleged discrimination."  *See* part I, *infra*.

the court moved straight to that solitary issue—beginning with a statement of

G4S's position.

"G4S asserts Barthelus was terminated for 'performance deficiencies'

evidenced by 'consistent criticism' from multiple supervisors.  In support, G4S

provides employee evaluations from 1999 to 2002, and 2007 through his

termination on February 10, 2011." *Id.* at 23.  The court concluded that "[t]hese

evaluations sufficiently satisf[ied] G4S's burden of production to provide a

legitimate non-discriminatory reason for Barthelus's termination," *id.*, and turned

to whether Barthelus had demonstrated that the reason was a pretext for

discrimination.  The court held that he had not.

The court based this holding on the fact that Barthelus was unable to point to

a replacement who was not protected, *id.* at 24–25; that the statistical evidence he

proffered was not probative, *id.* at 25–27; that although Galusha's comment that

Barthelus had "a communication issue with his accent" "may have contributed to a

circumstantial case for pretext, it [was] unaccompanied by any other evidence and

cannot singularly support a finding of pretext," *id.* at 28, 29; that the evidence of

G4S's failure to promote Barthelus was irrelevant because "[n]either the

[complaint] nor Barthelus's EEOC Charge of Discrimination[8] alleges a failure to

---

[8]  In the EEOC charging document [ECF No. 53-1], Barthelus alleged:

11

promote claim," *id.* at 31; and that "Barthelus's extensive history of negative

performance reviews followed by his own self-serving disagreements are not

evidence of pretext," *id.* 36.  In sum, the District Court granted G4S summary

judgment on Counts I and III solely on the ground that the evidence failed to create

a genuine issue of fact on the issue of pretext.

The court overlooked the fact that Counts I and III alleged that Barthelus had

been subjected to a pattern of workplace discrimination based on race and national

origin.  The allegations included that Barthelus "did not receive a pay increase

whereas all other non-Black, non-Haitian employees did"; that whites were

provided "an office" but he was not; that Mrs. Bria denied him "extra days off"

during the holiday season but granted them to whites; and that Mrs. Bria granted

whites "leave while denying Plaintiff the same privileges."

Moreover, in stating that "Barthelus's extensive history of negative

performance reviews followed by his own self-serving disagreements are not

evidence of pretext," the court cited, but apparently discounted, the following

Deborah H. Bria, Director I.T., created a very hostile working environment.  I was
singled out and treated differently from my White and younger co-workers.
When Deborah H. Bria was my Manager, she harassed me and tried to force me
to quit my job.  When she became Director, she had the authority to get rid of me
and that she did by using false accusations regarding my performance.  Therefore,
I believe I have been discriminated against because of my Age/55, my race/Black,
my national origin, Haitian, and retaliated against because I reported her
discriminatory conduct to Human Resources.  I am not aware of any younger
White employees being treated in the same manner.

facts:  After G4S downsized in 2002,[9] Barthelus's "performance reviews . . . were consistently positive."  Order at 5.  Galusha's evaluation was that Barthelus "had become a 'valuable addition to [G4S].'"  *Id.*  "Barthelus's December 2003 and December 2004 reviews were similarly positive."  *Id.*  In 2004, Galusha told Donahue, G4S's president and chief executive officer, that "Barthelus was underpaid."  *Id.* at 6.  In December 2005, Barthelus "received and increase in his salary, effective January 2006, which included a six percent '[m]erit' increase and a three percent '[a]djustment.'"  *Id.* at 8.  In 2007, Galusha emailed Laura Thomas, G4S's chief financial officer, that Barthelus "'feels he is being treated wrongly by those in the I.T. department because . . . [he is] black and . . . ha[s] an accent.'"  *Id.*  At the end of the year, Galusha gave Barthelus an unfavorable performance review.  *Id.* at 9.  On reconsideration, Galusha emailed Thomas that he "'came to the conclusion that most of the comments I gave in the review could be redacted and regarded as misunderstanding.'"  *Id.* at 10.  Barthelus's December 2008 performance review "included several examples indicating the manner in which Barthelus's performance needed to improve to avoid future system failures."  *Id.* at 11.  "Donahue advised him that 'it was not necessary for [Barthelus] to write a rebuttal because [G4S] put the reviews—whether good or bad—in the drawer and never pull[s] out the reviews again.'"  *Id.*

---

[9] G4S downsized after it was separated from The Wackenhut Corporation in 2002.

At some point prior to January 2009, Tech Search America ("TSA"), an independent information technology company, began an annual audit of G4S's I.T. Department.  The January 26, 2009, audit report, which the District Court did not mention in its order, contains this "Results of the Assessment":

> Our analysis process revealed some detailed information about [G4S]'s Internet point-of-presence network and internal network. This data was reviewed, and it was determined that [G4S] needs some *moderate* improvement to its overall security posture.
>
> TSA rates the overall [G4S] network security at 94.88%. This combined score is a result of receiving a score of 98.33% for the external audit and 91.43% for the internal audit.  These relatively high security ratings indicate that the network security staff of [G4S] has taken almost all of the appropriate steps to ensure a solid security posture for both the internal and external networks.
>
> This slight reduction is primarily due to the added weaknesses that were discovered during the internal assessment.  These weaknesses can be attributed to the fact that [G4S] HQ network has evolved to a greater and more complex network environment to suit the business needs of the [G4S] user community.  Note that TSA feels that the overall security posture of [G4S] is still quite good.  In addition, compared to assessments of companies and organizations of equal size, TSA finds that [G4S] is above par and secure.

Pl. Ex. V [ECF No. 52-26] at 5.  Since Barthelus was the Senior Network Administrator and only engineer in the I.T. Department and the Department's security posture was "above par and secure," it can be inferred from TSA's audit that Barthelus's performance may not have been as uniformly negative as the District Court concluded.

14

Case 1:12-cv-22945-CMA   Document 88   Entered on FLSD Docket 07/03/2014   Page 17 of 18
Case: 13-14121   Date Filed: 05/27/2014   Page: 15 of 16


The ultimate question this appeal presents is whether the evidence in the record before the District Court, considered in the light most favorable to Barthelus, creates material issues of fact. *See Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005). We are unable to answer this question with respect to Barthelus's claim that G4S, through its supervisors, discriminated against him in the workplace due to his race and national origin as alleged in Counts I and III because the District Court did not consider those claims. We have considered the court's decision that the evidence failed to establish a genuine issue of fact as to whether G4S's decision to terminate Barthelus's employment was a pretext for unlawful discrimination. We conclude that material issues of fact are present regarding pretext—especially when Barthelus's performance reviews are considered in light of the TSA audits.

## III.

For the foregoing reasons, we affirm the District Court's judgment on Counts II and IV but vacate its judgment on Counts I and III and remand the case for further proceedings on those counts. In considering whether Counts I and III present claims sufficient to withstand summary judgment, the District Court should bear in mind that those counts assert the "status-based" category of discrimination prohibited by Title VII. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 2522–23, 186 L. Ed. 2d 503 (2013).

15

> An employee who alleges status-based discrimination under Title VII
> need not show that the causal link between injury and wrong is so
> close that the injury would not have occurred but for the act. So-
> called but-for causation is not the test. It suffices instead to show that
> the motive to discriminate was one of the employer's motives, even if
> the employer also had other, lawful motives that were causative in the
> employer's decision.

*Id.*


AFFIRMED, in part, VACATED and REMANDED, in part.

16